RALPH GRANT, appellee, v. RUBY IRENE THOMAS and MURIEL THOMAS, appellants.

No. 50754.

(Reported in 118 N.W.2d 545)

DECEMBER 11, 1962.

Whitfield, Musgrave, Selvy, Fillmore & Kelly, of Des Moines, for appellants.

Duffield, Pinegar & Tapscott and Charles J. Cardamon, all of Des Moines, for appellee.

STUART, J.—Plaintiff brought an action for damages sustained in a collision between an automobile owned and driven by him and one owned by defendant Muriel Thomas and driven by the other defendant, Ruby Irene Thomas. The jury returned a verdict for plaintiff of $15,000, $9000 of which was for loss of future earning capacity as shown by the jury's response to a special interrogatory. The trial court overruled a motion for new trial on condition plaintiff remit damages in excess of $11,000. Such remittitur was filed. Defendants appealed on the ground: "The verdict of the jury as remitted is excessive, the result of passion and prejudice, unconscionable, and/or clearly not warranted by the evidence."

Defendants ask that the jury verdict as remitted be set aside or in the alternative that we make a further remittitur.

We hold the trial court was within its discretion in refusing to set the verdict aside unconditionally and in not requiring a larger remittitur than all in excess of $11,000 as a condition to the denial of a new trial.

As a determination of the above issues depends upon the facts and circumstances in each case, comparison with verdicts in other cases is not particularly helpful. Mallinger v. Brussow, 252 Iowa 54, 58, 105 N.W.2d 626, 628. From the evidence the jury could find the following facts.

At the time of trial Mr. Grant was 43 years of age, married, with two children. He was not a high-school graduate. He had worked 19 years for a tire manufacturer but at the time of the accident he was employed as a school custodian and school bus driver earning about $4400 per year. He also earned $30 per month as janitor for a church. He could do rough and finish carpentry and had exchanged about 300 hours work with his brother, a contractor, during 1958 and 1959. He had never done carpenter work for cash. He was active in Little League baseball and worked around the house and yard.

Mr. Grant's car was struck from behind while standing still. He sustained a whiplash type of injury and exhibited the usual symptoms. In addition, plaintiff's medical evidence disclosed evulsion fractures of the spinous tips of the second and seventh cervical vertebræ. This occurs when the muscles, ligaments and tendons pull the tips off the bone, and is probably accompanied by considerable stretching and tearing of muscles and ligaments and hemorrhage in the soft tissues. The symptoms of headache, pain and stiffness in the neck and shoulders continued until time of trial. His condition is permanent. He is unable to use striking tools or work with his arms above his head without pain. Heavy carpenter work will give him trouble.

Mr. Grant returned to his regular job after missing 12 to 14 days work. He resumed his duties at the church after a month or two. He does not do the janitor work at the school as well as he did before the accident. He does not play games with the children as he did before. The children on the bus give him more trouble because he is nervous. He has given up Little League baseball and no longer works around the house and yard. Because of the pain

in his neck he sometimes either walks the floor or sleeps in a chair as he did for a month following the accident.

Special damages were small. The doctor bills totaled $85, most of which were for X rays and medical reports. Other amounts were medicine $50, car damages $85.21 and loss of earning $160.

The allowance of damages is primarily for the jury and the court should not interfere unless it clearly appears the verdict was the result of passion and prejudice, is unconscionable, not warranted by the evidence or fails to administer substantial justice. The mere fact the court might have reached a lesser award does not justify the substitution of its judgment for that of the jury. Mallinger v. Brussow, 252 Iowa 54, 57, 105 N.W.2d 626, 628 (and citations). However, the verdict is always subject to the supervisory power of the court and where the award is clearly excessive the courts have not hesitated to require a remittitur. Jurgens v. Davenport, R. I. & N.W. Ry. Co., 249 Iowa 711, 723, 88 N.W.2d 797, 805.

I. To justify a new trial on the ground of the excessiveness of the verdict, the record must show it appears to have been a result of passion and prejudice on the part of the jury. Jurgens v. Davenport, R. I. & N.W. Ry. Co., 249 Iowa 711, 723, 88 N.W.2d 797, 805. The trial court in its broad discretion refused to grant a new trial on this ground. We agree the record and size of the verdict do not show passion and prejudice requiring a new trial.

II. Defendants contend we should order a further remittitur of the verdict, if we should fail to grant a new trial. They argue that we should not be so reluctant to interfere with the verdict because the trial court, by ordering a remittitur, found it failed to administer substantial justice.

We have before us the remitted verdict of $11,000 rather than the jury verdict of $15,000. This remittitur was made in response to the trial court's ruling on defendants' motion for new trial. The trial court has broad discretion in granting a new trial conditioned upon a remittitur to a set amount. We will not interfere with its ruling on a motion for new trial unless there appears to have been an abuse of discretion. Manders v. Dallam, 215 Iowa

137, 244 N.W. 724; Rogers v. Jefferson, 226 Iowa 1047, 285 N.W. 701; In re Estate of Hollis, 235 Iowa 753, 759, 16 N.W.2d 599, 602; Morris v. Standard Oil Co., 192 Cal. 343, 219 P. 998, 30 A. L. R. 1103. This discretion extends to the amount of the remittitur as well as the decision to grant or refuse a new trial. Although the amount of the award even as remitted seems to be on the liberal side, it is not so disproportionate to the injuries shown by plaintiff's evidence to constitute an abuse of discretion on the part of the trial court.

III. Defendants argue the award of $9000 for loss of future earning capacity separately. They contend that as plaintiff returned to his regular job after about two weeks and later on resumed his part-time job at the church and lost only $160 in wages, there is no loss of future earning capacity. Loss of earning capacity is actually an element of damages for permanent disability. It is to be measured by the present value of the loss or impairment of general earning capacity, rather than loss of wages or earnings in a specific occupation. Jurgens v. Davenport, R. I. & N.W. Ry. Co., 249 Iowa 711, 88 N.W.2d 797.

There is evidence to support the finding of the jury that plaintiff's future earning capacity was impaired. While he returned to the same job he had been holding he did not do it as well. His capabilities as a carpenter have been restricted. He gets nervous driving the school bus. He suffers pain and stiffness following hard labor that he did not have prior to the accident. These things would affect the earning capacity of a person who must seek his earnings from physical labor.

The trial court did not state the remittitur was to be taken from loss of future earning capacity. There was no need to do so. It is fair to assume the remittitur would be at least in proportion to the total verdict. The award for impairment of future earning capacity would then be $6600. This is not so excessive as to amount to an abuse of discretion on this record for a 43-year-old laboring man.

The rulings of the trial court are affirmed.—Affirmed.

All JUSTICES concur.